UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------
MENASHE F.,

                              Plaintiff,         <u>DECISION AND ORDER</u>
                                                 1:21-cv-06762-GRJ

              v.

COMMISSIONER OF SOCIAL SECURITY,

                              Defendant.
-------------------------------------------------------
GARY R. JONES, United States Magistrate Judge:

       In November of 2016, Plaintiff Menashe F.[1] applied for Supplemental

Security Income benefits and Disabled Adult Child's benefits under the

Social Security Act. The Commissioner of Social Security denied the

applications.  Plaintiff, represented by Lewis Bart Insler, Esq., commenced

this action seeking judicial review of the Commissioner's denial of benefits

under 42 U.S.C. §§ 405 (g) and 1383 (c)(3).  The parties consented to the

jurisdiction of a United States Magistrate Judge. (Docket No. 13).

       This case was referred to the undersigned on October 24, 2022.

Presently pending are the parties' Motions for Judgment on the Pleadings

under Rule 12 (c) of the Federal Rules of Civil Procedure. (Docket No. 19,

---

[1] Plaintiff's name has been partially redacted in compliance with Federal Rule of Civil
Procedure 5.2 (c)(2)(B) and the recommendation of the Committee on Court
Administration and Case Management of the Judicial Conference of the United States.

24). For the following reasons, Plaintiff's motion is due to be granted, the Commissioner's motion is due to be denied, and this case is remanded for further administrative proceedings.

## I.  BACKGROUND

### A.    Administrative Proceedings

Plaintiff applied for benefits on November 29, 2016, alleging disability from birth. (T at 228-37, 238-39).[2]  Plaintiff's applications were denied initially and on reconsideration.  He requested a hearing before an Administrative Law Judge ("ALJ").  A hearing was held on October 7, 2019, before ALJ Laura Michalec Olszewski. (T at 44). Plaintiff appeared with an attorney and testified. (T at 51-80). The ALJ also received testimony from Esperanza DiStefano, a vocational expert. (T at 81-85).

### B.    ALJ's Decision

On December 26, 2019, the ALJ issued a decision denying the applications for benefits. (T at 11-29).  The ALJ found that Plaintiff had not engaged in substantial gainful activity since February 5, 1993 (his date of birth and the alleged onset date) and had not attained the age of 22 as of the alleged onset date. (T at 16).  The ALJ concluded that Plaintiff's anxiety disorder, obesity, asthma, bipolar disorder, obsessive-compulsive disorder,

---

[2] Citations to "T" refer to the administrative record transcript at Docket No. 16.

autism spectrum disorder, and depressive disorder were severe impairments as defined under the Act. (T at 16).  However, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 403, Subpart P, Appendix 1. (T at 17).

The ALJ next determined that Plaintiff retained the residual functional capacity ("RFC") to perform a full range of work at all exertional levels, with the following non-exertional limitations: he should work in a low stress environment (defined as involving only occasional judgment, occasional decision-making, and occasional changes in work setting); he is limited to simple, routine, and repetitive tasks with occasional interaction with supervisors, co-workers, and the public; and no more than occasional exposure to respiratory irritants (dust, odors, fumes, gasses), and extreme temperatures. (T at 19).

After evaluating Plaintiff's RFC, the ALJ then found that Plaintiff had no past relevant work. (T at 23).  However, considering Plaintiff's age, education, work experience, and RFC, the ALJ concluded that there were jobs that exist in significant numbers that Plaintiff can perform.  (T at 23). As such, the ALJ found that Plaintiff had not been under a disability, as defined under the Social Security Act, and was not entitled to benefits for

the period between February 5, 1993 (the alleged onset date) and December 26, 2019 (the date of the ALJ's decision). (T at 24).  On October 27, 2020, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the Commissioner's final decision. (T at 5-8).

### C.    Procedural History

Plaintiff commenced this action, by and through his counsel, by filing a Complaint on August 11, 2021. (Docket No. 1).  On March 20, 2022, Plaintiff filed a motion for judgment on the pleadings, supported by a memorandum of law. (Docket No. 19, 20).  The Commissioner interposed a cross-motion for judgment on the pleadings, supported by a memorandum of law, on June 3, 2022. (Docket No. 24, 25).  On June 16, 2022, Plaintiff submitted a reply memorandum of law in further support of his motion. (Docket No. 26).

## II.  APPLICABLE LAW

### A.    Standard of Review

"It is not the function of a reviewing court to decide de novo whether a claimant was disabled."  *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999). The court's review is limited to "determin[ing] whether there is substantial evidence supporting the Commissioner's decision and whether the

Commissioner applied the correct legal standard." *Poupore v. Astrue*, 566 F.3d 303, 305 (2d Cir. 2009) (per curiam).

The reviewing court defers to the Commissioner's factual findings, which are considered conclusive if supported by substantial evidence. *See* 42 U.S.C. § 405(g). "Substantial evidence" is "more than a mere scintilla" and "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Lamay v. Commissioner of Soc. Sec.*, 562 F.3d 503, 507 (2d Cir. 2009) (internal quotations omitted) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

"In determining whether the agency's findings are supported by substantial evidence, the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (internal quotations omitted).

"When there are gaps in the administrative record or the ALJ has applied an improper legal standard," or when the ALJ's rationale is unclear, remand "for further development of the evidence" or for an explanation of the ALJ's reasoning is warranted. *Pratts v. Chater*, 94 F.3d 34, 39 (2d Cir. 1996).

B.    *Five-Step Sequential Evaluation Process*

Under the Social Security Act, a claimant is disabled if he or she lacks the ability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months ...."  42 U.S.C. § 423(d)(1)(A).

A claimant's eligibility for disability benefits is evaluated pursuant to a five-step sequential analysis:

> 1. The Commissioner considers whether the claimant is currently engaged in substantial gainful activity.
>
> 2. If not, the Commissioner considers whether the claimant has a "severe impairment" which limits his or her mental or physical ability to do basic work activities.
>
> 3. If the claimant has a "severe impairment," the Commissioner must ask whether, based solely on medical evidence, claimant has an impairment listed in Appendix 1 of the regulations. If the claimant has one of these enumerated impairments, the Commissioner will automatically consider him disabled, without considering vocational factors such as age, education, and work experience.
>
> 4. If the impairment is not "listed" in the regulations, the Commissioner then asks whether, despite the claimant's severe impairment, he or she has residual functional capacity to perform his or her past work.

5. If the claimant is unable to perform his or her past work, the Commissioner then determines whether there is other work which the claimant could perform.

*See Rolon v. Commissioner of Soc. Sec*., 994 F. Supp. 2d 496, 503

(S.D.N.Y. 2014); *see also* 20 C.F.R. §§ 404.1520(a)(4)(i)–(v),

416.920(a)(4)(i)–(v).

The claimant bears the burden of proof as to the first four steps; the

burden shifts to the Commissioner at step five. *See Green-Younger v.*

*Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003). At step five, the Commissioner

determines whether claimant can perform work that exists in significant

numbers in the national economy. *See Butts v. Barnhart*, 416 F.3d 101,

103 (2d Cir. 2005); 20 C.F.R. § 404.1560(c)(2).

## III. DISCUSSION

Plaintiff raises two main arguments in support of his request for

reversal of the ALJ's decision.  First, Plaintiff argues that the ALJ's

assessment of the medical opinion evidence was flawed.  Second, Plaintiff

contends that the denial of benefits should be reversed because of

constitutional problems with the appointment of the Social Security

Commissioner in office when his application was denied.  This Court will

address both arguments in turn.

A.    Medical Opinion Evidence

"Regardless of its source, the ALJ must evaluate every medical

opinion in determining whether a claimant is disabled under the [Social

Security] Act." *Pena ex rel. E.R. v. Astrue*, No. 11-CV-1787 (KAM), 2013

WL 1210932, at *14 (E.D.N.Y. Mar. 25, 2013) (citing 20 C.F.R. §§

404.1527(c), 416.927(d) (2020)) (internal quotation marks omitted).

A "treating physician" is the claimant's "own physician, psychologist,

or other acceptable medical source who provides [the claimant] ... with

medical treatment or evaluation and who has, or has had, an ongoing

treatment relationship with [the claimant]." 20 C.F.R. § 404.1502.

Treating physician opinions are considered particularly probative

because they "are likely to be the medical professionals most able to

provide a detailed, longitudinal picture of [the] medical impairment(s) and

may bring a unique perspective to the medical evidence that cannot be

obtained from the objective medical evidence alone or from reports of

individual examinations." 20 C.F.R. §§ 404.1527(c)(2); 416.927(d)(2).

An opinion from a treating physician is afforded controlling weight as

to the nature and severity of an impairment, provided the opinion "is well-

supported by medically acceptable clinical and laboratory diagnostic

8

techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. §§ 404.1527(c)(2); 416.927(d)(2).[3]

However, treating physician opinions are not always dispositive.  For example, an opinion will not be afforded controlling weight if it is "not consistent with other substantial evidence in the record, such as the opinions of other medical experts." *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004).

To determine how much weight a treating physician's opinion should be given, the ALJ considers the "*Burgess* factors" identified by the Second Circuit: "(1) the frequen[cy], length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist." *Estrella v. Berryhill*, 925 F.3d 90, 95–96 (2d Cir. 2019)(following *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008)).

The *Burgess* factors are also applied to the opinions of non-treating physicians, "with the consideration of whether the source examined the claimant or not replacing the consideration of the treatment relationship

[3] In January of 2017, the Social Security Administration issued new regulations regarding medical opinion evidence.  The revised regulations apply to claims filed on or after March 27, 2017.  *See* 20 C.F.R. § 404.1520c.  Because Plaintiff's application was filed prior to that date, the prior rules (as outlined above) apply.

between the source and the claimant." *McGinley v. Berryhill*, No. 17 Civ. 2182, 2018 WL 4212037, at \*12 (S.D.N.Y. July 30, 2018).  A consultative physician's opinion may constitute substantial evidence. *See Petrie v. Astrue*, 412 F. Appx 401, 406 (2d Cir. 2011).

In June of 2019, Dr. Eltan Bitter, Plaintiff's long-time treating psychologist, noted diagnoses of autism spectrum disorder, generalized anxiety disorder, and persistent depressive disorder. (T at 526).  Dr. Bitter identified several issues that interfered with Plaintiff's ability to work, socialize, and be productive, including rigidity, execution functioning deficits, social skills deficits, major depression, and obsessive worries. (T at 526).  Dr. Bitter described Plaintiff as struggling with personal hygiene, completing assignments on time, and making decisions. (T at 526).  He explained that Plaintiff was "very much still in the midst of an extended debilitating psychiatric status that appears will persist for the foreseeable future." (T at 527).

In September of 2019, Dr. Bitter completed an assessment of Plaintiff's mental RFC, in which he opined that Plaintiff had no significant limitations with understanding or memory; no significant limitation with carrying out instructions; but marked limitation in maintaining attention and concentration; moderate limitation in maintaining regular attendance and

being punctual within customary tolerances; and marked limitation in his ability to complete a normal workweek without interruptions from psychologically-based symptoms. (T at 1327).  He also assessed marked limitation in Plaintiff's ability to accept instructions and respond appropriately to criticism from supervisors and with setting realistic goals or marking plans independently of others. (T at 1328-29).  Dr. Bitter believed Plaintiff would likely be absent from work twice a month due to his impairments or treatments. (T at 1330).

The ALJ gave Dr. Bitter's opinions[4] "some weight," finding them "generally inconsistent with [Plaintiff's] treatment notes and admitted activities of daily living." (T at 22).

The ALJ afforded great weight to Dr. Bitter's conclusion that Plaintiff had no significant limitations in understanding or memory and only moderate impairment with social interaction. (T at 22-23).  The ALJ, however, rejected Dr. Bitter's assessment regarding Plaintiff's ability to attend and concentrate, finding it inconsistent with Plaintiff's extended videogaming, and discounted Dr. Bitter's conclusion that Plaintiff could not complete a normal workday, finding it inconsistent with Plaintiff's capacity

---

[4] The ALJ erroneously referred to Dr. "Ritter." (T at 22).

to attend college, work part-time, take care of his father, and perform volunteer work. (T at 23).

The Court concludes that the ALJ's analysis of Dr. Ritter's assessments was inadequate.  Here's why.

The ALJ does not appear to have accounted for the particular value afforded to treating source opinions when reviewing claims involving mental impairments.  *See Flynn v. Comm'r of Soc. Sec. Admin.*, 729 Fed. Appx. 119, 122 (2d Cir. 2018)("The treatment provider's perspective would seem all the more important in cases involving mental health, which are not susceptible to clear records such as [x-rays] or MRIs. Rather, they depend almost exclusively on less discretely measurable factors, like what the patient says in consultations.").

The ALJ gave great weight to the opinion of Dr. Charles Heller, a consultative examiner, who opined that Plaintiff could follow and understand direction and instructions but would require assistance with complex tasks. (T at 22, 424).

The ALJ also afforded great weight to the assessment of Dr. M. Marks, a non-examining State Agency review physician, who stated that Plaintiff could understand and remember simple (and some complex) instructions and procedures; sustain a normal work-like routine with some

12

additional support; engage in basic interactions to meet work-related needs and respond appropriately to some additional support; and cope with basic changes and make routine decisions. (T at 22, 441).

Notably, however, Dr. Heller's opinion was based on a single examination, Dr. Marks never observed Plaintiff, both opinions were remote in time from the administrative hearing (they were rendered in 2012), and neither opinion reflects Dr. Bitter's longitudinal understanding of the course and progression of Plaintiff's various impairments.

The consultative psychiatric evaluation of Dr. Melissa Antiaris, performed in January of 2017, provides some support for the ALJ's decision.  Dr. Antiaris described Plaintiff as cooperative and anxious, with intact attention and concentration; displaying mildly impaired memory skills and below average cognitive functioning, and demonstrating fair insight and judgment. (T at 519-20).

Dr. Antiaris assessed no limitations in Plaintiff's ability to follow and understand simple directions or perform simple tasks independently. (T at 520-21).  She opined that Plaintiff had mild limitation in maintaining attention and concentration and keeping a regular schedule. (T at 521). Dr. Antiaris found Plaintiff moderately limited with respect to relating adequately with others and dealing appropriately with stress. (T at 521).

She diagnosed social anxiety disorder, unspecified depressive disorder, autism spectrum disorder (per Plaintiff's report), and rule-out obsessive-compulsive disorder. (T at 521).

Nonetheless, Dr. Antiaris's opinion is not sufficient to justify discounting Dr. Bitter's assessment, which was based on a long-term treating relationship and enhanced opportunity to observe and assess Plaintiff's limitations. *See Marinez v. Comm'r of Soc. Sec*., 269 F. Supp. 3d 207, 216 (S.D.N.Y. 2017)(recognizing that treating provider is the medical professional "most able to provide a detailed, longitudinal picture of [Plaintiff's] medical impairment(s)," with "a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations") (citing 20 C.F.R. § 416.927(c)(2)).

The Second Circuit has long cautioned that "ALJs should not rely heavily on the findings of consultative physicians after a single examination." *Selian v. Astrue*, 708 F.3d 409, 419 (2d Cir. 2013)(citing *Cruz v. Sullivan*, 912 F.2d 8, 13 (2d Cir. 1990)).  "This concern is even more pronounced in the context of mental illness where … a one-time snapshot of a claimant's status may not be indicative of her longitudinal mental health." *Estrella*, 925 F.3d 90, 98 (2d Cir. 2019).

In addition, the ALJ overstated the significance of Plaintiff's activities. Plaintiff's ability to play videogames at home and work part-time with the support of a job coach is not *ipso facto* inconsistent with Dr. Ritter's conclusion that Plaintiff would be unable to sustain concentration on non-preferred work tasks, maintain a full-time work schedule, and accept instructions and respond appropriately to criticism.

The Commissioner's regulations recognize that a claimant's "ability to complete tasks in settings that are highly structured, or that are less demanding or more supportive than typical work settings does not necessarily demonstrate [her] ability to complete tasks in the context of regular employment during a normal workday or work week."  20 C.F.R. Subpt. P, App. 1 § 12.00 (C) (6) (b); *see also Primo v. Berryhill*, 17 Civ. 6875, 2019 U.S. Dist. LEXIS 27074, at *31 (S.D.N.Y. Feb. 19, 2019)(noting that ALJs must recognize that "the effects of a mental health issue may be different in a work setting than in a non-work setting"); *Flynn*, 729 Fed. Appx. at 121 (decision to discount opinion based on treatment notes indicating claimant was "well-groomed and with calm affect" was "an assessment ... beyond the scope of the ALJ's authority").

Lastly, the ALJ placed undue emphasis on the treatment notes and "conservative" treatment history.  *See Stacey v. Comm'r of SSA*, 799 F.

Appx. 7, 10 (2d Cir. 2020)(cautioning "ALJs against scouring medical notes to draw their own conclusions based on isolated descriptions"); *Gough v. Saul*, 799 F. Appx. 12, 14 (2d Cir. 2020)("We fear that the ALJ cherry-picked evidence from the record to support his conclusion that Gough could work full time even though the record as a whole suggested greater dysfunction.").

The Court, therefore, finds a remand necessary for reconsideration of Dr. Ritter's assessment to address the issues identified above.

B.    *Constitutional Challenge*

Relying on the Supreme Court's decision in *Seila Law LLC v. CFPB*, 140 S. Ct. 2183, 2192 (2020), Plaintiff challenges the constitutional authority under which the Commissioner of Social Security adjudicated her claim for benefits.

This argument has been rejected by numerous courts in this Circuit (and across the country) who have considered and rejected identical arguments by other Social Security claimants.  *See, e.g., Betty Jean B. on behalf of L.J.B. v. Kijakazi*, No. 6:21-CV-0125 (ML), 2022 WL 873827, at *6 (N.D.N.Y. Mar. 24, 2022); *Platt v. Comm'r of Soc. Sec*., No. 20 CIV. 8382 (GWG), 2022 WL 621974, at *5-*6 (S.D.N.Y. Mar. 3, 2022); *Michael H. v*.

*Comm'r of Soc. Sec*., No. 1:20-CV-1466-DB, 2022 WL 768658, at \*18 (W.D.N.Y. Mar. 14, 2022).

Nonetheless, because the Court finds remand necessary on other grounds, resolution of this issue is unnecessary.  *See Rivers v. Kijakazi*, No. 21 CIV. 820 (JCM), 2022 WL 2901578, at \*23 (S.D.N.Y. July 22, 2022).

### C.    Remand

"Sentence four of Section 405 (g) provides district courts with the authority to affirm, reverse, or modify a decision of the Commissioner 'with or without remanding the case for a rehearing.'" *Butts v. Barnhart*, 388 F.3d 377, 385 (2d Cir. 2002) (quoting 42 U.S.C. § 405 (g)).  Remand for further administrative proceedings is the appropriate remedy "[w]here there are gaps in the administrative record or the ALJ has applied an improper legal standard." *Rosa v. Callahan*, 168 F.3d 72, 82-83 (2d Cir. 1999); *see also Rhone v. Colvin*, No. 13-CV-5766 (CM)(RLE), 2014 U.S. Dist. LEXIS 180514, at \*28 (S.D.N.Y. Nov. 6, 2014).

As explained above, the Court finds a remand necessary for proper consideration of Dr. Bitter's assessments of Plaintiff's ability to meet the mental demands of basic work activity on a sustained basis.

## IV.  CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Judgment on the Pleadings (Docket No. 19) is GRANTED; the Commissioner's Motion for Judgment on the Pleadings (Docket No. 24) is DENIED; and this case is REMANDED for further administrative proceedings consistent with this Decision and Order. The Clerk is directed to enter final judgment and then close the file.

Dated: December 16, 2022                    _s / Gary R. Jones_
                                            GARY R. JONES
                                            United States Magistrate Judge